# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| TYARRL JONES,<br><br>      Plaintiff,<br>v.<br><br>WARDEN MICHAEL MEISNER,<br>ANGELA THOMPSON, MILLER, DR.<br>K. LABBY, R.N. BARTER, R.N. W.<br>BORGEN, S. KLENCE,<br>CHRISTOPHER TUVESON, and<br>JOHN AND JANE DOES,<br><br>      Defendants. | Case No. 20-CV-1074-JPS<br><br>**ORDER** |

   Plaintiff Tyarrl Jones, an inmate confined at the Prairie du Chien Correctional Institution, filed a *pro se* complaint under 42 U.S.C. § 1983 alleging that the defendants violated his rights under federal and state law. (Docket #1). This order resolves Plaintiff's motion for leave to proceed without prepaying the filing fee and motion to appoint counsel, as well as screens his complaint.

**1. MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYING THE FILING FEE**

   The Prison Litigation Reform Act ("PLRA") applies to this case because Plaintiff was a prisoner when he filed his complaint. *See* 28 U.S.C. § 1915(h). The PLRA allows the Court to give a prisoner plaintiff the ability to proceed with his case without prepaying the civil case filing fee. 28 U.S.C. § 1915(a)(2). When funds exist, the prisoner must pay an initial partial filing fee. 28 U.S.C. § 1915(b)(1). He must then pay the balance of the $350 filing fee over time, through deductions from his prisoner account. *Id.*

On July 22, 2020, the Court ordered Plaintiff to pay an initial partial filing fee of $18.27. (Docket #7). Plaintiff paid that fee on August 11, 2020. The Court will grant Plaintiff's motion for leave to proceed without prepaying the filing fee. (Docket #3). He must pay the remainder of the filing fee over time in the manner explained at the end of this order.

2.     **SCREENING THE COMPLAINT**

    **2.1     Federal Screening Standard**

Under the PLRA, the Court must screen complaints brought by prisoners seeking relief from a governmental entity or an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint if the prisoner raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b).

In determining whether the complaint states a claim, the Court applies the same standard that applies to dismissals under Federal Rule of Civil Procedure 12(b)(6). *See Cesal v. Moats*, 851 F.3d 714, 720 (7th Cir. 2017) (citing *Booker-El v. Superintendent, Ind. State Prison*, 668 F.3d 896, 899 (7th Cir. 2012)). To state a claim, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts, accepted as true, to "state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States, and that whoever deprived him of this right was acting under the color of state law. *D.S. v. E. Porter Cty. Sch. Corp.*, 799 F.3d 793, 798 (7th Cir. 2015) (citing *Buchanan–Moore v. Cty. of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009)). The Court construes *pro se* complaints liberally and holds them to a less stringent standard than pleadings drafted by lawyers. *Cesal*, 851 F.3d at 720 (citing *Perez v. Fenoglio*, 792 F.3d 768, 776 (7th Cir. 2015)).

### 2.2 Plaintiff's Allegations

While out of custody, Plaintiff was seriously injured on June 24, 2015, when he was shot multiple times in the back and torso. (Docket #1 at 2). The bullet to his back injured his spine and caused severe damage to his nerves, resulting in pain, muscle spasms, and issues with his left foot. (*Id.*) The bullet to his torso required surgery to his stomach, and the doctor advised that Plaintiff would have bowel movement and urinary problems and should contact his medical provider. (*Id.*) In 2017, Plaintiff noticed that his testicles were swollen, and he was told that "this was because...one of the practitioners pulled the tube from [his] penile improperly" during his 2015 surgery. (*Id.*)

On June 28, 2017, Plaintiff was incarcerated at Dodge Correctional Institution ("DCI"). (*Id.*) Plaintiff told the medical staff about his injuries due to being shot. (*Id.* at 2–3). A DCI medical staffer, Defendant Jane Doe, informed Plaintiff that he would receive X-rays and other testing due to his past injuries. (*Id.* at 3). X-rays were taken of Plaintiff before he was transferred to Green Bay Correctional Institution ("GBCI") on August 28, 2017. (*Id.*) While at GBCI, Plaintiff alleges he was given inadequate medical

Page 3 of 13
Case 2:20-cv-01074-JPS   Filed 01/08/21   Page 3 of 13   Document 10

care because he would be put on and taken off medication to treat his injuries and pain, sometimes going without medication and leaving him in pain. (*Id.*) Plaintiff was given an ultrasound of his testicles to determine the cause of the swelling and pain. (Docket #1–1 at 8).

On May 26, 2019, Plaintiff was transferred to Redgranite Correctional Institution ("RCI") and began writing to the Health Services Unit ("HSU") regarding his injuries. (Docket #1 at 3). On June 19, 2019, Plaintiff had an appointment at HSU with Defendant S. Klence ("Klence"), where he discussed his swelling testicles, pain, inadequate pain medication, and his need for a new leg brace. (*Id.* at 4). Plaintiff was informed that he would be seeing a specialist and should discuss the pain and medication with the doctor, and that HSU would make sure Dr. Labby knew that Plaintiff needed a new brace. (*Id.*; Docket #1–1 at 9).

During his June 19, 2020 appointment, Plaintiff also requested a new mattress with extra cushion due to his back pain; HSU told him to contact special needs regarding the items. (*Id.*) Plaintiff never received a response from special needs regarding a mattress or leg brace. (*Id.*) On June 20, 2019, Plaintiff filed an inmate complaint regarding his placement on a top bunk, which he could not use safely due to his back and leg pain, and therefore he had to sleep seated in a chair in his cell. (*Id.* at 5). Plaintiff filed several more complaints, but apparently did not receive a response. (*Id.*)

On August 10, 2019, Plaintiff was sent to a private urologist, Defendant Dr. Christopher Tuveson, ("Dr. Tuveson"). (*Id.* at 6). Allegedly, Dr. Tuveson looked at Plaintiff's testicles for a few seconds and told Plaintiff that he could not do anything. (*Id.*) Dr. Tuveson agreed with Plaintiff that something was wrong but said that he could not help him. Plaintiff was never taken to see another urologist for a second opinion. (*Id.*)

Plaintiff continued to complain to HSU that his medication did not work and that he was still in pain throughout 2019 and into 2020. (*Id.* 6–7). Plaintiff consistently asked to be put on different medication. (*Id.* at 7). Around March 27, 2020, Plaintiff wrote to HSU stating that he believed his original surgery was not done correctly and requested HSU contact his original doctors to see if Plaintiff needed additional surgery. (*Id.* at 8). Plaintiff did not receive a response to his request. (*Id.*)

An ultrasound was done on Plaintiff and on June 12, 2020, Plaintiff had an appointment with the RCI Doctor, Defendant Dr. Labby ("Dr. Labby"), regarding his medical issues. (*Id.* at 9). Dr. Labby briefly discussed the ultrasound findings, stating that the only issue she found was fluid around both testicles. (*Id.*) Dr. Labby examined Plaintiff and stated that she could drain the fluid with a needle if it came down to it. Plaintiff responded "came down to what? I'm in pain!" and that he needed help. (*Id.*) Allegedly, Dr. Labby responded to Plaintiff by threatening a treatment to cut off his testicles. (*Id.*) Plaintiff proceeded to tell Dr. Labby about his other pain and how the medication did not work much, resulting in very little sleep. (*Id.*) Lastly, Plaintiff was concerned that the medical issues with his testicles may affect his ability to have future children. (*Id.*)

A few days later, on June 17, 2020, Dr. Labby wrote to Plaintiff explaining that the ultrasound showed a moderate right side fluid pocket and a small cyst. (Docket #1–1 at 19). Dr. Labby further explained that neither of the findings were dangerous but could become uncomfortable if the fluid collection was large enough. (*Id.*) Dr. Labby stated she entered a consult to urology because sometimes a fluid collection can be drained with a needle, and she told Plaintiff to contact HSU with further questions. (*Id.*)

## 2.3 Analysis

### 2.3.1 Personal Involvement of Certain Defendants

Section 1983 "creates a cause of action based on personal liability and predicated upon fault; thus liability does not attach unless the individual defendant caused or participated in a constitutional violation." *Vance v. Peters*, 97 F.3d 987, 991 (7th Cir. 1996). Moreover, the doctrine of respondeat superior (supervisory liability) does not apply to actions filed under Section 1983. *See Pacelli v. deVito*, 972 F.2d 871, 877 (7th Cir. 1992). Section 1983 does not create collective or vicarious responsibility. *Id.*

Plaintiff will not be allowed to proceed against John and Jane Does and Warden Michael Meisner ("Meisner") because the complaint does not contain any allegations about them.[1] Additionally, Meisner cannot be liable for the actions of other prison officials simply because he is the warden. Rather, he is responsible only for his own conduct. *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995) (to be liable, a supervisory defendant "must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye"). Plaintiff has not alleged any facts that would attach personal liability to Meisner. Therefore, the Court will dismiss Defendants John and Jane Does and Meisner.

### 2.3.2 Eighth Amendment

Plaintiff's allegations invoke his rights under the Eighth Amendment, which secures an inmate's right to medical care. Prison officials violate this right when they "display deliberate indifference to serious medical needs of prisoners." *Greeno v. Daley*, 414 F.3d 645, 652 (7th

---

[1] A Jane Doe was briefly referenced in the complaint, but only as a DCI medical staffer who informed Plaintiff that he would receive medical tests. No other John or Jane Does were mentioned in the complaint.

Cir. 2005) (quotation omitted). To sustain this claim, Plaintiff must show: (1) an objectively serious medical condition; (2) that Defendants knew of the condition and were deliberately indifferent in treating it; and (3) this indifference caused him some injury. *Gayton v. McCoy*, 593 F.3d 610, 620 (7th Cir. 2010).

An objectively serious medical condition is one that "has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would perceive the need for a doctor's attention." *Hayes v. Snyder*, 546 F.3d 516, 522 (7th Cir. 2008). A medical condition need not be life-threatening to be serious; rather, it could be a condition that would result in further significant injury or unnecessary and wanton infliction of pain if not treated. *See Reed v. McBride*, 178 F.3d 849, 852 (7th Cir.1999). The deliberate indifference inquiry has two components. "The official must have subjective knowledge of the risk to the inmate's health, and the official also must disregard that risk." *Id.* Negligence cannot support a claim of deliberate indifference, nor is medical malpractice a constitutional violation. *Estelle v. Gamble*, 429 U.S. 97, 105–06 (1976); *Roe v. Elyea*, 631 F.3d 843, 857 (7th Cir. 2011). Even if a defendant recognizes the substantial risk, he is free from liability if he "responded reasonably to the risk, even if the harm ultimately was not averted." *Farmer v. Brennan*, 511 U.S. 825, 843 (1994).

In light of the low bar applied at the screening stage, the Court finds that Plaintiff may proceed on a claim for deliberate indifference to a serious medical condition in violation of the Eighth Amendment. Plaintiff's claims that he had pain from prior gunshot injuries and from swollen testicles sufficiently allege a serious medical condition. Plaintiff further alleges that Defendants Klence and Dr. Labby knew about his medical issue, did not

change his medication that he claimed was not working, and did not perform any treatment to alleviate the pain from his swollen testicles. Thus, Plaintiff's complaint sufficiently states a claim for deliberate indifference to a serious medical condition in violation of the Eighth Amendment against Defendants Klence and Dr. Labby.

The claims against the other Defendants are less obvious. It is unclear from the complaint which of the other Defendants were involved in each decision and interaction with Plaintiff regarding his medical issues. The exhibits to Plaintiff's pleading (Docket #1–1) indicate that many of the Defendants responded to Plaintiff's complaints or signed them. Individual liability under § 1983 "requires personal involvement in the alleged constitutional deprivation." *Colbert v. City of Chi.*, 851 F.3d 649, 657 (7th Cir. 2017) (quoting *Minix v. Canarecci*, 597 F.3d 823, 833 (7th Cir. 2010)). At the screening stage, the Court finds that Plaintiff has sufficiently alleged that Defendants Angela Thompson, Miller, R.N. Barter, and R.N. W. Borgen were made aware of the situation through his inmate complaints and HSU requests, and that Plaintiff has stated a claim against them for deliberate indifference in violation of the Eighth Amendment.

Lastly, at this stage is it unclear whether Defendant Dr. Christopher Tuveson ("Dr. Tuveson") was acting as a state actor or under color of state law at the time he treated Plaintiff. Thus, the Court will allow Plaintiff to proceed on a claim of deliberate indifference against Dr. Tuveson in violation of the Eighth Amendment. But, if Dr. Tuveson was not a state actor or acting under color of state law, then the claim will fail and Dr. Tuveson will be dismissed. *See Buchanan–Moore*, 570 F.3d at 827.

### 2.3.3 Negligence

Plaintiff also seeks to proceed on a negligence claim. To sustain a claim for medical malpractice, as with all negligence claims, Plaintiff must allege "(1) a breach of (2) a duty owed (3) that results in (4) an injury or injuries, or damages." *Paul v. Skemp*, 625 N.W.2d 860, 865 (Wis. 2001). "In short, a claim for medical malpractice requires a negligent act or omission that causes an injury." *Id.* The Court may exercise supplemental jurisdiction over any negligence claims that are related to the federal constitutional violations. 28 U.S.C. § 1367. Here, Plaintiff's negligence claims arise from the same conduct that his Eighth Amendment violations do. Thus, for the reasons previously stated, (*see* Section 2.3.2, *supra*), Plaintiff has sufficiently alleged a claim of negligence against Defendants Klence, Dr. Labby, Angela Thompson, Miller, R.N. Barter, R.N. W. Borgen, and Dr. Tuveson.

## 3. MOTION TO APPOINT COUNSEL

The Court next turns to Plaintiff's motion to appoint counsel. (Docket #4). As a civil litigant, Plaintiff has no automatic right to court-appointed counsel. *Luttrell v. Nickel*, 129 F.3d 933, 936 (7th Cir. 1997). However, under 28 U.S.C. § 1915(e)(1), the "court may request an attorney to represent any person unable to afford counsel." The court should seek counsel to represent a plaintiff if: (1) he has made reasonable attempts to secure counsel; and (2) "'the difficulty of the case—factually and legally—exceeds the particular plaintiff's capacity as a layperson to coherently present it.'" *Navejar v. Iyiola*, 718 F.3d 692, 696 (7th Cir. 2013) (quoting *Pruitt v. Mote*, 503 F.3d 647, 655 (7th Cir. 2007) (en banc)).

Plaintiff's motion must be denied at this juncture, as he has submitted no evidence that he has made any attempts—much less reasonable attempts—to secure his own lawyer. To satisfy this Court that

Page 9 of 13
Case 2:20-cv-01074-JPS   Filed 01/08/21   Page 9 of 13   Document 10

he has made reasonable attempts to obtain his own counsel, Plaintiff must write to several lawyers requesting representation and provide copies of the letters he receives from them denying his request. On this ground alone, the motion must be denied, without considering Plaintiff's arguments about the complexity of the case or his particular need for the aid of counsel.

### 4. CONCLUSION

In light of the foregoing, the Court finds that Plaintiff may proceed on the following claims pursuant to 28 U.S.C. § 1915A(b):

**Claim One:** Deliberate indifference to Plaintiff's serious medical needs, in violation of the Eighth Amendment, against S. Klence, Dr. K. Labby, Angela Thompson, Miller, R.N. Barter, R.N. W. Borgen, and Christopher Tuveson; and

**Claim Two:** Negligence, pursuant to Wisconsin state law, against S. Klence, Dr. K. Labby, Angela Thompson, Miller, R.N. Barter, R.N. W. Borgen, and Christopher Tuveson.

Accordingly,

**IT IS ORDERED** that Plaintiff's motion for leave to proceed without prepaying the filing fee (Docket #3) be and the same is hereby **GRANTED**;

**IT IS FURTHER ORDERED** that Plaintiff's motion to appoint counsel (Docket #4) be and the same is hereby **DENIED**;

**IT IS FURTHER ORDERED** that Defendants Warden Michael Meisner and John and Jane Does be and the same are hereby **DISMISSED** from this action;

**IT IS FURTHER ORDERED** that under an informal service agreement between the Wisconsin Department of Justice and this Court, a copy of the complaint and this order have been electronically transmitted

to the Wisconsin Department of Justice for service on Defendants S. Klence, Dr. K. Labby, Angela Thompson, Miller, R.N. Barter, and R.N. W. Borgen;

**IT IS FURTHER ORDERED** that under the informal service agreement, those Defendants shall file a responsive pleading to the complaint within 60 days;

**IT IS FURTHER ORDERED** that the U.S. Marshals Service shall serve a copy of the complaint and this order upon Defendant Christopher Tuveson pursuant to Federal Rule of Civil Procedure 4. Plaintiff is advised that Congress requires the U.S. Marshals Service to charge for making or attempting such service. 28 U.S.C. § 1921(a). Although Congress requires the Court to order service by the U.S. Marshals Service, it has not made any provision for these fees to be waived either by the court or by the U.S. Marshals Service. The current fee for waiver-of-service packages is $8.00 per item mailed. The full fee schedule is provided at 28 C.F.R. §§ 0.114(a)(2), (a)(3). The U.S. Marshals Service will give Plaintiff information on how to remit payment. The Court is not involved in collection of the fee;

**IT IS FURTHER ORDERED** that Defendant Christopher Tuveson shall file a responsive pleading to the complaint;

**IT IS FURTHER ORDERED** that the agency having custody of Plaintiff shall collect from his institution trust account the $331.73 balance of the filing fee by collecting monthly payments from Plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to Plaintiff's trust account and forwarding payments to the Clerk of Court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. § 1915(b)(2). The payments shall be clearly identified by the case name and number assigned to this case. If Plaintiff is transferred to another county, state, or federal institution, the transferring institution shall

Page 11 of 13
Case 2:20-cv-01074-JPS   Filed 01/08/21   Page 11 of 13   Document 10

forward a copy of this order along with his remaining balance to the receiving institution;

**IT IS FURTHER ORDERED** that a copy of this order be sent to the officer in charge of the agency where Plaintiff is confined;

**IT IS FURTHER ORDERED** that the Clerk's Office mail Plaintiff a copy of the guides entitled "Answers to Prisoner Litigants' Common Questions" and "Answers to Pro Se Litigants' Common Questions," along with this order; and

**IT IS FURTHER ORDERED** that plaintiffs who are inmates at Prisoner E-Filing Program institutions[2] must submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the Court. Plaintiffs who are inmates at all other prison facilities must submit the original document for each filing to the court to the following address:

> Office of the Clerk
> United States District Court
> Eastern District of Wisconsin
> 362 United States Courthouse
> 517 E. Wisconsin Avenue
> Milwaukee, Wisconsin 53202

PLEASE DO NOT MAIL ANYTHING DIRECTLY TO THE JUDGE'S CHAMBERS. It will only delay the processing of the matter.

Plaintiff is further advised that failure to make a timely submission may result in the dismissal of this case for failure to diligently pursue it. In addition, the parties must notify the Clerk of Court of any change of

---

[2]The Prisoner E-Filing Program is mandatory for all inmates of Columbia Correctional Institution, Dodge Correctional Institution, Green Bay Correctional Institution, Oshkosh Correctional Institution, Waupun Correctional Institution, and Wisconsin Secure Program Facility.

address. Failure to do so could result in orders or other information not being timely delivered, thus affecting the legal rights of the parties.

Dated at Milwaukee, Wisconsin, this 8th day of January, 2021.

BY THE COURT:

_____
J. P. Stadtmueller
U.S. District Judge